## City of Collinsville v. Walter Eichmann, by Next Friend.

1. Expert Witnesses—*Can Not be Allowed to Usurp the Province of the Jury.*—Questions can not be asked expert witnesses in such a way as to cover the very question to be found by the jury.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. Benjamin R. Burroughs, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

Appellee recovered a judgment against appellant, for $800, damages, in an action on the case, for negligently failing to keep certain streets of the city in a condition to be safe for public travel, and particularly, as stated in the first count of plaintiff's declaration, that the city " negligently and wrongfully suffered and permitted the drain or crossing running east and west at the intersection of Seminary avenue with Main street, on the south side of Main street, to be and remain in a dangerous condition for public travel, and so deep and the sides thereof so steep and smooth that it became and was then and there dangerous for public travel and use; by means whereof plaintiff, while passing along Seminary avenue from the south toward Main street, riding upon a horse, exercising due care and caution for his safety, was thrown from the horse, by reason of the horse slipping and falling in said drain or crossing, and was thereby thrown and fell to and upon the street and in the drain or crossing, and ground there, and thereby the ankle of his left leg was dislocated and greatly injured and the bone injured, ligaments, tendons, torn and broken."

The second and third counts are not materially different from the first count, except it is alleged in the second count that the brick drain or crossing was negligently constructed and in such a manner as to the depth and sides, as to be unsafe for public travel, etc.

It is shown by the evidence that appellee was a boy between eight and nine years of age, and resided with his

parents about two miles from the city of Collinsville. That on the 8th of May, 1900, he, with a neighbor boy thirteen years of age named Kalbfleisch, went on horseback to Collinsville, the Kalbfleisch boy to deliver some butter to a Mrs. Warner, who resided in that city, and the Eichmann boy probably went along for company. The evidence is somewhat conflicting as to the speed the horses were traveling before and at the time they arrived in the city, but it is not probable that boys of their ages were riding at a slow walk, neither does it clearly appear that they were riding at a rapid rate. At the intersection of Seminary avenue with Main street, two of the principal streets of the city, and along the south side of Main street, running east and west, is a brick " foot crossing," "drain," "gutter" or " ditch," as it seems to be severally called, the bottom of which is lower than the surface of the streets, the depth of it about fourteen inches, and the sides, or at least the south side of it, before a change in the depth of it made by the city after the accident, was quite steep, the entire drain being encased on the sides and bottom with paving brick, set edgewise, for pedestrians and teams to cross.

As appellee attempted to cross this drain or gutter, as he says, "on a slow trot," his horse slipped and fell down, and either because the horse fell on the boy's leg, foot or ankle, or all of them, or in some other way not particularly disclosed by the evidence, the boy was seriously injured in his left ankle. At the time of the accident the physician called to examine him was of the opinion (in which the boy's parents seemingly acquiesced) that the boy would soon recover, and for a short time his treatment was in accordance with the hopes entertained; but as the boy did not speedily recover, an examination of the injured ankle was made by a skillful surgeon, who found it badly injured, as set up in the first count of the declaration, and the probability was, the boy would never fully recover.

At the close of appellee's evidence in chief appellant entered a motion to take the case from the jury, which was denied, and at the close of all the evidence the motion was

renewed, but with no better success, and appellant excepted to each ruling of the court.

BURTON & WHEELER, attorneys for appellant; W. E. HADLEY and R. GUY KNEEDLER, of counsel.

TERRY & WILLIAMSON, attorneys for appellee.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

Appellant's first contention is, that the court erred in refusing to permit two city street commissioners and two civil engineers to testify that in their opinion the crossing of the drain or gutter was reasonably safe for travel over it. If the witnesses had been asked their opinions as to how or in what manner a reasonably safe drain and crossing for the public to travel over could have been made in this particular place, they should have been allowed to answer; but since the answer to the question as asked, must necessarily have been an attempted solution of the very question the jury were called upon to determine, they were properly excluded, for however competent an expert witness may be in the line of business about which he is called to testify, his testimony can not be treated as infallible nor made to take the place of a verdict of a jury.

The second contention of counsel for appellant is substantially the same as the first and requires no different disposition.

The third contention is stated as follows:

" The duty of the city of Collinsville was to use due care to make its streets reasonably safe for public travel and use. It was not an insurer against possible accidents. If it constructed its streets in the manner approved by those experts whose business for over thirty years has been the construction of brick streets, it has complied with the requirements of the law."

The first part of the contention correctly states the law, but the latter part of it does not, since it does not follow as a matter of law, that the opinion of any two or more men, whatever their experience in the construction of

streets, crossings and gutters may have been, can absolutely settle the fact as to whether even their own constructions have been built in such a manner as to meet the full requirements of the law, in regard to being reasonably safe for travelers or pedestrians to travel upon or over.

The fourth point made has relation to the amount of damages given by the jury, which will be noticed hereafter.

The fifth point made by appellant's counsel is, that a rough plat of the streets where they intersect, and of the crossing and gutter, drawn by a young man who was familiar with the place and had often driven his horse across the gutter or drain, and who was a witness in the case, and used the plat to explain the situation of the place where appellee's horse, and where the horse of the witness, had slipped and fallen, and which was allowed to go to the jury against the objection of appellant, was improperly put in evidence. We are unable to concur in the views of the counsel, and especially so since the counsel consented that the jury might visit and examine the place where appellee met with the injury, and which was supposed to be represented by the plat; and since the jury did visit and examine the place, the introduction of the plat in evidence, however imperfect it may have been, could have done appellant no harm.

Two or three other points are made but we do not deem them of sufficient importance to require special mention, except perhaps the point in regard to the amount of damages found by the jury, and as to this, it is true that the father of the boy did not, for some time after the boy was injured, think that a claim for damages against the city would be made, as he did not know how serious the injury was, and it was not until he called a surgeon from St. Louis, that he learned the real condition of the boy.

· There is no ground for the suggestion made, that the medical attention of the boy for a time after the injury was neglected, and that much of the damage to the boy has arisen from the neglect.

It is true that the first physician called to attend the boy

did not ascertain the extent of the injury the boy had met with, but he seems to have done all that he deemed necessary under the circumstances, and we can discover no ground for complaint of either physician.

No serious complaint is made about the giving or refusing instructions, and we fail to discover any substantial fault in them.

There are in the case no important questions of law to be determined, and while some of the evidence shows that the boy was negligent, the question whether his negligence, considering his age, materially contributed to his injury, has been settled by the jury in his favor.

As the jury, by examining the place where the boy was injured, were unanimous in finding that the appellant city was guilty of negligence that was the cause of the injury, any court should hesitate before setting aside such a verdict.

As to the amount of damages found by the jury it would be somewhat larger than it ought to be, but for the probability that the boy will never fully recover. With this probability before us, we are unable to say the verdict is excessive.

Finding no error in the record that calls for a reversal of the judgment it is affirmed.